IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-485-FL

| | | |
|---|---|---|
| RICHARD WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Richard Williams ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). This matter is before the court on Plaintiff's brief [DE-18] ("Pl.'s Brief") seeking judgment in his favor, Defendant's responsive brief [DE-20] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-21] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-18] be allowed, Defendant's brief [DE-20] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on January 26, 2021, alleging disability beginning April 2, 2018. Transcript of Proceedings ("Tr.") 105, 341-42.

Plaintiff subsequently amended his alleged onset date to a closed period of April 2, 2018, to August 3, 2021.  Tr. 17, 76, 364.  His claim was denied initially.  Tr. 115-16, 155-59.  Plaintiff filed a request for reconsideration (Tr. 166), and was denied upon reconsideration on February 23, 2022 (Tr. 117-26, 167-71).  On March 2, 2022, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ").  Tr. 172-73.  A hearing before ALJ Kelly Davis was held on April 20, 2023, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  Tr. 70-104.

On May 22, 2023, the ALJ issued a decision denying Plaintiff's request for benefits.  Tr. 127-45.  On May 26, 2023, Plaintiff requested a review of the ALJ's decision by the Appeals Council.  Tr. 265-67.  On October 4, 2023, the Appeals Council granted the request and remanded the claim to the ALJ for further administrative proceedings.  Tr. 146-51.

A second administrative hearing was held on February 29, 2024, before the same ALJ, at which Plaintiff, represented by counsel, and a VE appeared and testified.  Tr. 39-69.  On April 12, 2024, the ALJ issued a decision denying Plaintiff's claims.  Tr. 14-38.  On June 27, 2024, the Appeals Council denied Plaintiff's request for review of the ALJ's second administrative decision.  Tr. 1-6.  Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II.  STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the Commissioner . . . as to any fact, if supported by

2

substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III.  DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent

3

steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 31. At step one, the ALJ determined Plaintiff had engaged in substantial gainful activity from January 2022 through September 2022. Tr. 19. The ALJ also found, however, that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. Tr. 20.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: disorders of the skeletal spine; hypertension; diabetes mellitus; hypertensive cardiovascular disease; and cardiac dysrhythmias. Tr. 20. The ALJ also found Plaintiff had the following non-severe impairments: obesity; any sprains or strains; mild to moderate cervical degenerative changes; and disorder of the male genital organ. Tr. 20. With regard to mental impairments, the

4

ALJ found that Plaintiff "alleged PTSD (posttraumatic stress disorder), but the medical records include no evidence of PTSD or any other psychiatric impairments." Tr. 21.

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> he requires a sit/stand option, where he can change positions every 30 minutes; he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; he can frequently balance; and he must avoid concentrated exposure to extreme cold, extreme hot, and to hazards, such as dangerous machinery and unprotected heights.

Tr. 23.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 24.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work as a truck driver helper, dump truck driver, chauffeur, or janitor, as actually or generally performed. Tr. 28-29. Nonetheless, at step five, upon considering Plaintiff's

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); Social Security Ruling ("S.S.R.") 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

5

age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 29-31.

## V.  DISCUSSION

Plaintiff contends that the ALJ erred by failing to perform a Paragraph B analysis despite Plaintiff raising a colorable claim of mental health impairments.  Pl.'s Brief [DE-18] at 1. Specifically, Plaintiff argues that:

> [w]here a claimant raises a colorable claim of a mental impairment, the ALJ must analyze the mental impairment using the psychiatric review technique, wherein the ALJ rates the claimant's degree of impairment in each of the Paragraph B criteria and determines whether the impairment is non-severe or severe based on this assessment.

*Id.* at 12 (citing 20 C.F.R. § 404.1520a; *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017); *Jack B. v. Saul*, CBD-18-3057 at *14 (D. Md. Jan. 21, 2020); *Cole v. Colvin*, 2:12-CV-44-FL, 2013 WL 3984019, at *4-5 (E.D.N.C. Aug. 01, 2013)).

The Commissioner counters that "only mental impairments that are medically determinable are subject to this 'special technique,' and here, the ALJ reasonably concluded that 'the medical records include no evidence of . . . any . . . psychiatric impairments.'"  Def.'s Brief [DE-20] at 6 (citing Tr. 21).  The Commissioner argues that in light of this reasonable conclusion, "[t]he ALJ properly found that Plaintiff did not have a medically determinable mental impairment."  Def.'s Brief [DE-20] at 6.

Plaintiff asserts that he has raised a colorable claim of mental impairment, thereby requiring the ALJ to analyze the severity of the mental impairment using the special-technique under the regulations, based upon: (i) his "list[ing] PTSD as an alleged impairment in his initial application" (Pl.'s Brief [DE-18] at 12 (citing Tr. 106)); (ii) information in a third-party function report provided by Plaintiff's ex-wife "about Plaintiff's mental symptoms, including depression, increased sleep,

6

short attention span, inability to handle stress well, and decreased concentration and cognition" (*id.* (citing Tr. 441-47)); and (iii) Plaintiff's "providers attributing his symptoms to an adjustment disorder, noted he displayed questionable judgment and insight and difficulty with abstract thinking, which negatively impacted his medication compliance" (*id.* (citing Tr. 1078, 1308, 1539, 1635-37, 8663, 8877-78)).

In support, Plaintiff highlights various portions of his medical record and other evidence, including: (i) a July 18, 2021 treatment note of medical provider, Gregg A. Robbins-Welty, M.D., M.S. ("Dr. Robbins-Welty") that Plaintiff "seems to be struggling with adjustment to new medical illness and inability to have control over situation, possibly alluding to either an adjustment disorder or simply poor distress tolerance" and "given that patient is likely experiencing something on the adjustment disorder spectrum, would recommend psychosocial interventions" (Pl.'s Brief [DE-18] at 5 (quoting Tr. 1078)); (ii) Dr. Robbins-Welty's July 20, 2021 treatment note that "what [Plaintiff] is experiencing is most likely on the adjustment disorder spectrum" and "[g]iven collateral gathered from son, it appears that patient's current affect and distress tolerance is consistent with what would be on the spectrum of his baseline personality" (*id.* (second alteration in original) (quoting Tr. 1308)); (iii) UNC Health Care notes from August 10, 2021, including reports by Plaintiff, that he was "feeling 'weak and uncertain about the future,'" by Plaintiff's ex-wife that Plaintiff "was 'still foggy in his head and not his usual self,'" (quoting Tr. 1538)), and by Plaintiff's provider that his "'mood and manner are flat and downcast' with '[s]peech slow and monosyllabic, depressed affect, responds appropriately though briefly to questions' and 'questionable' judgment and insight" (*id.* (alteration in original) (quoting Tr. 1539)); (iv) Duke Health provider notes from February 3, 2022, that Plaintiff "still has trouble taking his medications as prescribed," "demonstrates difficulty with abstract thinking" and "may have cognitive difficulty

7

with abstract thinking, and may need extra support to comply with medical regimens" (*id.* (quoting Tr. 1635-37)); (v) Duke Health provider notes from April 1, 2022, that Plaintiff "demonstrates difficulty with abstract thinking," "may have cognitive difficulty with abstract thinking, and may need extra support to comply with medical regimens'" (*id.* at 6 (quoting Tr. 8662-63)); (vi) Duke Health provider notes from October 5, 2022, that Plaintiff "demonstrates difficulty with abstract thinking," "[u]sually is taking most of his[] medications at each clinic visit, and needs help getting back on track each time" and "may have cognitive difficulty with abstract thinking, and may need extra support to comply with medical regimens" (*id.* (alterations in original) (quoting Tr. 8877-78)).

Plaintiff also acknowledges that the ALJ noted a record from July 26, 2021, that Plaintiff exhibited improved mental status. *Id.* at 10 (citing Tr. 26).

Plaintiff highlights observations by his ex-wife, Tammy Williams, in a third-party function report that Plaintiff's "cognitive skills are a little off" (*id.* at 11 (quoting Tr. 443)); "he is depressed" (*id.* (quoting Tr. 443)); "[h]e doesn't talk much anymore, [h]e wants to just sleep more" (*id.* (quoting Tr. 446)); his "concentration + understanding is off[, and h]is mind just wanders and his speech isn't strong so he doesn't talk much" (*id.* (quoting Tr. 446)); "he could not pay attention long due to a short attention span" (*id.* (citing Tr. 446)); and "he did not handle stress well" (*id.* (citing Tr. 447)).

In her decision, the ALJ provides that "[i]n reviewing the record, special attention was given to the duration and frequency of medical conditions for which [Plaintiff] sought treatment." *Id.* The ALJ makes the following findings regarding Plaintiff's mental impairments:

> [A] medically determinable impairment may not be established solely on the basis of a claimant's allegations regarding symptoms. Impairment must result from anatomical, physiological, or psychological abnormalities, which can be shown by

medically acceptable clinical or laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, or laboratory findings, not only by the claimant's statement of symptoms (20 CFR 404.1521).  Here, the claimant alleged PTSD (posttraumatic stress disorder), but the medical records include no evidence of PTSD or any other psychiatric impairments (Ex. 5E/2; 2A/5; 4A/5).

Tr. 21.

In support of this finding, the ALJ cites Plaintiff's disability report, wherein Plaintiff lists "Back Injury," "PTSD," "HBP," and "AFib" in response to a question asking for "all of the physical or mental conditions (including emotional or learning problems) that limit your ability to work."  Tr. 424.  The ALJ also cites the disability determination explanation at the initial level by April Strobel-Nuss, Psy.D. ("Dr. Strobel-Nuss") and at the reconsideration level by Kendra McCarty, Psy.D. ("Dr. McCarty"), in which each found that "[t]here are no mental medically determinable impairments established."  Tr. 110, 122.

Dr. Strobel-Nuss' disability determination explanation provides that Plaintiff "is able to understand but chooses to be noncompliant w/ meds, seeks tx as needed, able to communicate w/ providers clearly w/o any noted mental health difficulties on [Plaintiff's] behalf or from providers."  Tr. 110.  Dr. McCarty similarly noted that "[w]hile the third party ADLs indicated some nonspecific issues there is no medically determinable mental impairment to associate them with."  Tr. 122.

An ALJ must consider the severity of a claimant's medically determinable impairments at step two of the sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).  A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  20 C.F.R. § 404.1521.

9

An impairment is "severe . . . if it significantly limits an individual's physical or mental abilities to do basic work activities" while an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." S.S.R. 96-3p, 1996 WL 374181, at *1; *see also* 20 C.F.R. § 404.1521 (defining non-severe impairments and providing examples of basic work activities).

Plaintiff bears the burden of proof and production during step two of the sequential evaluation process. *See Pass*, 65 F.3d at 1203. "As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process." *Pittman v. Astrue*, No. 5:08-CV-83-FL, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008) (unpublished).

The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). "[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).

Under the "special technique" an ALJ must first evaluate a claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b). If the ALJ determines that the claimant has one or more medically determinable mental impairments, the ALJ "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [these] findings in accordance with [applicable regulations]." *Id.* Relevant regulations provide

10

that "a . . . mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Accordingly, while Plaintiff's subjective allegations and the third-party report of his ex-wife may inform the ALJ's analysis on the functional limitations resulting from Plaintiff's medically determinable impairments (*see* 20 C.F.R. § 404.1520a), these sources alone are insufficient to establish a medically determinable impairment. *See* 20 C.F.R. § 404.1521.

Yet, as Plaintiff highlights in his brief, there are multiple references to adjustment disorder and cognitive difficulties in the medical record. While the ALJ notes a finding from July 26, 2021, that Plaintiff exhibited improved mental status ( Tr. 26), the ALJ does not otherwise reference or discuss any of these findings in her decision (*see* Tr. 14-31). While an "error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps," *Barfield v. Colvin*, No. 4:15-CV-135-F, 2016 WL 4705672, at *3 (E.D.N.C. Aug. 19, 2016), *report and recommendation adopted*, No. 4:15-CV-00135-F, 2016 WL 4705545 (E.D.N.C. Sept. 8, 2016) (citing *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished)), the ALJ did not consider any mental impairments at subsequent steps, specifically with respect to the special technique required for mental impairments at step two of the sequential evaluation process. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017) ("[T]he weight of authority suggests that failure to properly document application of the special technique will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review.").

Numerous ALJ's have found adjustment disorders to represent medically determinable impairments. *See Tarrant v. Kijakazi*, No. 5:20-CV-258-FL, 2021 U.S. Dist. LEXIS 185376, at *4-5 (E.D.N.C. Sep. 28, 2021) (noting ALJ finding of "adjustment disorder with mixed anxiety

and depressed mood" as severe impairment); *Cunningham v. Comm'r of Soc. Sec.*, No. SA-23-CV-00299-XR, 2024 U.S. Dist. LEXIS 30448, at *4-5 (W.D. Tex. Feb. 1, 2024) (noting ALJ's finding that Plaintiff had a severe impairment of "adjustment disorder with mixed and depressed mood"). Similarly, another court has found remand necessary where "[t]he ALJ completely ignored any evidence of cognitive problems." *Johnnie M. v. Berryhill*, No. 2:18-cv-00066-MJD-JMS, 2019 U.S. Dist. LEXIS 21574, at *9 (S.D. Ind. Feb. 11, 2019).

While the references to Plaintiff's "cognitive difficulty with abstract thinking (Tr. 1635-37) postdate the closed period, they may still be relevant to extent they provide insights on Plaintiff's condition during the relevant period. *See Bird v. Comm'r of SSA*, 699 F.3d 337, 340 (4th Cir. 2012) ("Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's [date last insured].") *superseded on other grounds by statute.*

The Commissioner contends that "in a record spanning more than 8,000 pages . . . the few, fragmented allusions to the possibility of a mental impairment do not definitively *show* the existence of one, and certainly not one corroborated by adequate 'clinical and laboratory diagnostic techniques.'" Def.'s Brief [DE-20] at 12 (citing 20 C.F.R. § 404.1521). Even if the Commissioner is correct that the evidence does not definitively show the presence of a medically determinable mental impairment, there is no requirement that medical evidence definitively show the existence of a medically determinable impairment, before an ALJ must discuss it. Rather, discussion by the ALJ is necessary where there is "contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *See McNeill v. Saul,* No. 5:20-CV-244-M, 2021 WL 3701348, at *3 (E.D.N.C. June 2, 2021) (quoting *Mascio*, 780 F.3d at 636). The medical records cited by Plaintiff provide contradictory evidence to the ALJ's findings that "the medical

12

records include no evidence of PTSD or any other psychiatric impairments" and should therefore have been discussed.

The Commissioner contends that "the record showed that Plaintiff received no formal mental health treatment, and his treating doctors neither definitively diagnosed nor treated him for any mental conditions during the relevant period." Def's Brief [DE-20] at 8. The Commissioner cites numerous examples where Plaintiff "consistently denied mental health symptoms when asked" (*id.* (citing Tr. 642, 695, 713, 787, 800, 894, 973, 977, 983, 990, 999)), and where "his treating providers routinely documented entirely normal mental status findings" (*id.* (citing Tr. 643, 654, 675, 696, 713, 769, 776, 788, 800, 892, 897, 1067, 1099, 1257, 1266, 1276, 1537, 1566, 1604, 2131, 5890, 5909, 6226, 6235, 6245, 8164, 9009)). Such reasoning, however, must come from the ALJ in the first instance. *See Lewis v. Saul*, No. 7:19-CV-246-FL, 2021 WL 826777, at *5 (E.D.N.C. Feb. 8, 2021) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 109 (4th Cir. 2020)) (finding *post-hoc* justifications prohibited as a general rule); *see also Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) (the court may only affirm an ALJ's decisions based on the reasons given by the ALJ). Accordingly, such arguments are insufficient to sustain the ALJ's burden.

The Commissioner notes that "the ALJ relied on the prior administrative medical findings of State agency psychological experts, who reached the same conclusions." *Id.* The Fourth Circuit has found that in order to determine whether the opinion of a non-examining, non-treating physician constitutes substantial evidence, the court must consider the specific facts of the case. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Yet the court cannot fully consider the ALJ's evaluation of the relevant facts of this case, as the ALJ does not discuss medical evidence documenting Plaintiff's alleged mental limitations. Additionally, the State agency psychological

13

experts also do not discuss the medical records referencing Plaintiff's conditions in reference to the "adjustment disorder spectrum" (Tr. 1078) or "cognitive difficulty." Tr. 1635-37. Accordingly, the ALJ's reliance on these opinions does not cure the absence of meaningful analysis in her decision with respect to evidence regarding a possible mental impairment.

Plaintiff argues that his case is analogous to *Cole v. Colvin*, No. 2:12-CV-44-FL, 2013 WL 3984019 (E.D.N.C. Aug. 1, 2013). In *Cole*, the "plaintiff repeatedly described herself as depressed in forms sent to the Social Security Administration" and "[t]he medical record also contain[ed] evidence of depression." No. 2:12-CV-44-FL, 2013 WL 3984019, at *4 (E.D.N.C. Aug. 1, 2013). Accordingly, United States District Judge Louise W. Flanagan found that "the record reflects that plaintiff has made a 'colorable claim' for depression and the ALJ's failure to follow the special technique was error." *Id.* at 5. The Commissioner attempts to distinguish this case from *Cole* arguing that the plaintiff "had been clearly diagnosed with depression, treatment notes indicated she was 'severely depressed,' and the plaintiff in *Cole* had undergone extensive treatment with antidepressant medications." Def.'s Brief [DE-20] at 12-13. The Commissioner further argues that the medical evidence in the instant case "gave no obvious indication of a mental impairment— it suggested Plaintiff's symptoms were simply part of his 'baseline personality,' which was 'reassuring and suggest[ed] against starting a psychotropic agent.'" *Id.* at 13 (alteration in original) (citing Tr. 1308). Even if there are reasons to conclude that references in the medical record to conditions on the "adjustment disorder spectrum" (Tr. 1308) or "cognitive difficult[ies]" (Tr. 1635-37) do not warrant a finding that Plaintiff had a medically determinable mental impairment, the numerous references to such conditions in the medical record require any such reasoning in this regard to come from the ALJ in the first instance. The Commissioner argues that "even if portions of the record could have allowed the ALJ to make a different finding, substantial evidence

14

does not demand that all of the evidence align." Def.'s Brief [DE-20] at 12. While there may indeed be substantial evidence to support the ALJ's position, it is unclear whether the ALJ even considered the evidence cited in Plaintiff's brief. An ALJ is not required to discuss every piece of evidence in the record. *See Reid v. Comm'r of Soc. Sec.,* 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). Yet before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless*, 131 F.3d at 439-40. Here, the absence of any meaningful discussion on references in the medical record to Plaintiff's mental limitations leaves the undersigned unable to determine whether the ALJ's decision is supported by substantial evidence. Accordingly, the undersigned RECOMMENDS that this case be REMANDED for further proceedings.

While the ALJ may ultimately determine, based upon the evidence, that Plaintiff does not have any medically determinable mental impairments, such analysis must come from the ALJ in the first instance after considering all relevant evidence. On remand, the Commissioner should make findings that sufficiently explain the probative evidence, and that would permit meaningful judicial review, if necessary. *See Monroe*, 826 F.3d at 189 (quoting *Mascio*, 780 F.3d at 636).

## VI. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's brief [DE-18] be ALLOWED, Defendant's brief [DE-21] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 2, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge

15

must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 14 days from the filing of the objections or March 10, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 20th day of February, 2026.

_____
Brian S. Meyers
United States Magistrate Judge

16